Scott E. Davis
State Bar No. 016160
SCOTT E. DAVIS, P.C.
20827 North Cave Creek Road, Suite 101
Phoenix, AZ  85024

Telephone:  (602) 482-4300
Facsimile:    (602) 569-9720
email: davis@scottdavispc.com

*Attorney for Plaintiff Carol Sprock*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Carol Sprock,<br><br>             Plaintiff,<br><br>      v.<br><br>Aetna Life Insurance Company; Penn Foster, Inc.; Penn Foster, Inc. Long Term Disability Plan,<br><br>             Defendants. | Case No.<br><br>**COMPLAINT** |

Now comes the Plaintiff Carol Sprock (hereinafter referred to as "Plaintiff"), by and through her attorney, Scott E. Davis, and complaining against the Defendants, she states:

*Jurisdiction*

1.  Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover employee benefits.  In addition, this action may be brought before this Court pursuant to 28

-1-

1  U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of
2  the United States.

### *Parties*

3.  2. Plaintiff is a resident of Maricopa County, Arizona.

4.  3. Upon information and belief, Defendant Penn Foster, Inc. (hereinafter referred to as the "Company") sponsored, subscribed to, paid for in whole or in part, a group disability insurance policy which was fully insured and administered by Aetna Life Insurance Company (hereinafter referred to as "Aetna"). The specific Aetna policy is known as GP-705812 (hereinafter referred to as the "Policy"). The Company's purpose in subscribing to the Aetna policy was to provide disability insurance for its employees. Upon information and belief, the Aetna policy may have been included in and part of the Penn Foster, Inc. Long Term Disability Plan (hereinafter referred to as the "Plan") which may have been created to provide the Company's employees with welfare benefits. At all times relevant hereto, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1).

4.  Upon information and belief, the Company or Plan may have delegated responsibility for the plan and/or claim administration of the policy to Aetna. Plaintiff believes that as it relates to her claim, Aetna functioned in a fiduciary capacity as the Plan and/or Claim Administrator.

5.  Upon information and belief, Plaintiff believes Aetna operated under a conflict of interest in evaluating her claim due to the fact it operated in dual roles as the decision maker with regard to whether Plaintiff was disabled as well as the payor of benefits; *to wit,* Aetna's conflict existed in that if it found Plaintiff was disabled it was also liable for payment of those benefits.

6. The Company, Plan and Aetna conduct business within Maricopa County and all events giving rise to this Complaint occurred within Maricopa County.

*Venue*

7. Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

*Nature of the Complaint*

8. Incident to her employment, Plaintiff was a covered employee pursuant to the Plan and the relevant policy and a "participant" as defined by 29 U.S.C. §1002(7). Plaintiff seeks disability income benefits from the Plan and the relevant policy pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B) as well as any other employee benefits from Defendants that she may be entitled to as a result of being found disabled.

9. After working for the Company as a loyal employee, Plaintiff became disabled on or about October 11, 2010 due to serious medical conditions and was unable to work in her designated occupation as a Senior Instructor. Plaintiff has remained disabled as that term is defined in the relevant policy continuously since that date and has not been able to return to any occupation as a result of her serious medical conditions.

10. Following her disability, Plaintiff applied for short term disability benefits which were approved and have been exhausted.

11. Plaintiff then applied for long term disability benefits under the relevant Aetna policy. The relevant long term disability policy provides the following definition of disability:

According to the Penn Foster, Inc. LTD Group Policy:

From the date that you first become disabled and until Monthly Benefits are payable for 24 months, you will be deemed to be disabled on any day if:

- You are not able to perform the material duties of your own occupation solely because of: disease or injury; and

- Your work earnings are 80% or less of your adjusted predisability earnings.

After the first 24 months that any Monthly Benefit is payable during a period of disability, you will be deemed to be disabled on any day if you are not able to work at any reasonable occupation solely because of:

- Diseases; or

- Injury.

12. In support of her claim for long term disability, Plaintiff submitted to Aetna medical records from her treating physicians supporting her disability as defined by the relevant Aetna policy.

13. Aetna approved Plaintiff's claim for long term disability benefits for the period of April 19, 2011 through August 31, 2011. Aetna informed Plaintiff in a letter dated January 13, 2012 that it was terminating benefits beyond August 31, 2011 due to a lack of medical documentation supporting her inability to return to her regular occupation.

14. As part of its review of Plaintiff's claim for long term disability benefits, Aetna obtained a medical record only review of Plaintiff's claim from Elana Mendelssohn, Psy.D. Upon information and belief, Plaintiff believes Dr. Mendelssohn is a long time consultant for the disability insurance industry and as such, has a conflict of interest. Plaintiff further believes Dr. Mendelssohn has an incentive to protect her own consulting relationships with the disability insurance industry and Aetna by providing medical record only reviews which selectively review or ignore evidence, such as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to insurance companies and which supported the denial of Plaintiff's claim.

15. Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed the January 13, 2012 termination of her long term disability benefits in a letter dated June 29, 2012. In support

of her appeal, Plaintiff submitted to Aetna additional medical, neuropsychological, vocational and lay witness evidence demonstrating she met any definition of disability set forth in the relevant Aetna policy.

16. In support of her appeal, Plaintiff submitted to Aetna a narrative letter dated July 10, 2012 from her current treating board certified physician who opined, "…I believe that [Plaintiff] is unable to return to work in a full-time, competitive job. It is unlikely that she will be able to return to work in the foreseeable future."

17. In support of her appeal, Plaintiff also submitted to Aetna a Neuropsychological Evaluation Report dated June 25, 2012 authored by a board certified professional who determined, after an evaluation of Plaintiff and her serious medical conditions, that "…it is probable that she will remain unable to work in any full-time, competitive job indefinitely."

18. Further supporting her appeal, Plaintiff submitted a vocational report from a certified vocational expert dated August 9, 2012. The vocational expert concluded, "[Plaintiff] has been unable to engage in competitive employment since October 11, 2010."

19. In addition to the medical records and reports submitted to Aetna, Plaintiff also submitted a June 4, 2012, sworn affidavit authored by her parents who confirmed Plaintiff is unable to work in any occupation and her condition has not improved in any way since her date of disability.

20. As part of its review of Plaintiff's claim for long term disability benefits, Aetna obtained a medical records only "paper review" of Plaintiff's claim from an external physician. Upon information and belief, Plaintiff believes the retained physician may be a long time consultant for the disability insurance industry and as such, has a conflict of interest. Plaintiff further alleges the retained physician has an incentive to protect his/her

own consulting relationships with the disability insurance industry and Aetna by providing medical record only reviews which selectively review or ignore evidence, such as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to insurance companies such as Aetna and which supported the denial of Plaintiff's claim.

21. In a letter dated October 26, 2012, in order to engage Aetna in a dialogue and so that she could perfect her claim, Plaintiff requested a complete copy of any and all medical records only "paper reviews" from Aetna and the opportunity to provide these reviews to her treating physicians for response prior to Aetna rendering a final determination in her claim.

22. Prior to rendering its final denial, Aetna never shared with Plaintiff the reports authored by the peer reviewing medical professional(s) it retained and never engaged Plaintiff in a dialogue so she could either respond to the report(s) and/or perfect her claim. Aetna's failure to provide Plaintiff with the opportunity to respond to the medical professional's report(s) precluded a full and fair review pursuant to ERISA and is a violation of Ninth Circuit case law.

23. In a letter dated November 14, 2012, Aetna notified Plaintiff it had denied her appeal for long term disability benefits under the Aetna policy. In the letter, Aetna also notified Plaintiff she had exhausted her administrative levels of review and could file a civil action lawsuit in federal court pursuant to ERISA.

24. In denying Plaintiff's claim, Aetna failed to adequately investigate the claim and failed to engage her in a dialogue with regard to what evidence was necessary so Plaintiff could perfect her appeal and claim. Aetna's failure to investigate the claim and to engage in this dialogue or to obtain the evidence it believed was important to perfect Plaintiff's claim is a violation of ERISA and Ninth Circuit case law and a reason she did not receive a full and fair review.

25. Upon information and belief, Aetna denied Plaintiff a lawful, full and fair review pursuant to ERISA for various other reasons including but not limited to: failing to properly investigate the claim by considering all evidence submitted by Plaintiff or de-emphasizing the medical evidence supporting Plaintiff's disability; failing to credit Plaintiff's reliable evidence; disregarding Plaintiff's self-reported symptoms; failing to consider all the diagnoses and/or limitations set forth in her medical evidence as well as the combination those diagnoses and limitations would have on her ability to work in any occupation; failing to investigate by obtaining an Independent Medical Examination when the policy allowed for one; failing to engage Plaintiff in a dialogue so she could submit the necessary evidence to perfect her claim and failing to consider the impact the side effects from Plaintiff's medications would have on her ability to engage in any occupation.

26. In evaluating Plaintiff's claim on appeal, Aetna had an obligation pursuant to ERISA to administer Plaintiff's claim "solely in her best interests and other participants" which it failed to do.[1]

27. Plaintiff believes a reason Aetna provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due to the dual roles Aetna undertook as decision maker and payor of benefits which created an inherent conflict of interest. Plaintiff believes Aetna's conflict of interest is evident in the fact that it reviewed and approved her short term disability claim and paid Plaintiff the

---

[1] It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

maximum short term disability benefits. In addition, Aetna paid Plaintiff a portion of her long term disability benefits, but when confronted with the potential of paying long term disability benefits for an extended period of time and incurring additional liability; Aetna terminated Plaintiff's benefits after only approximately four (4) months, even though Plaintiff's medical diagnoses and limitations had not changed and the short and long term disability policies contained essentially the same definition of disability. Due to its conflict of interest, when Aetna terminated Plaintiff's long term disability benefits, it saved money.

28. Plaintiff is entitled to discovery regarding Aetna's aforementioned conflicts of interest and any individual, including the medical records review professionals who reviewed her claim and the Court may properly weigh and consider evidence regarding the nature, extent and effect of *any* conflict of interest which may have impacted or influenced Aetna's decision to deny her claim.

29. With regard to whether Plaintiff meets the definition of disability set forth in the policy, the Court should review the evidence in Plaintiff's claim *de novo*, because even if the Court concludes the policy confers discretion, the unlawful violations of ERISA committed by Aetna as referenced herein are so flagrant they justify *de novo* review.

30. As a direct result of Aetna's decision to deny Plaintiff's disability claim, she has been injured and suffered damages in the form of lost disability benefits, in addition to other potential employee benefits she may have been entitled to receive through or from the Plan and/or Company as a result of being found disabled, including but not limited to, health insurance benefits or coverage, retirement or pension benefits, a life insurance policy and a waiver of the life insurance premium on that policy in the event Plaintiff became disabled.

31. Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid benefits, prejudgment interest, reasonable attorney's fees and costs from Defendants.

1    32. Plaintiff is entitled to prejudgment interest at the rate of 10% per annum pursuant to A.R.S. §20-462, or at such other rate as is appropriate to compensate her for losses she incurred as a result of Defendants' unjustified denial of payment of benefits.

WHEREFORE, Plaintiff prays for judgment as follows:

A. For an Order requiring Defendants to pay Plaintiff disability benefits and any other employee benefits she may be entitled to as a result of being found disabled pursuant to the policy and/or Plan from the date she was first denied these benefits through the date of judgment and prejudgment interest thereon;

B. For an Order finding that Plaintiff meets any definition of disability set forth in the relevant Aetna policy and/or Plan and directing Defendants to continue paying Plaintiff the aforementioned benefits until such time she meets the conditions for termination of benefits;

C. For attorney's fees and costs incurred as a result of prosecuting this suit pursuant to 29 U.S.C. §1132(g); and

D. For such other and further relief as the Court deems just and proper.

DATED this 11th day of February, 2013.

SCOTT E. DAVIS. P.C.

By:  */s/ Scott E. Davis*
     Scott E. Davis
     Attorney for Plaintiff